**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: March 3 2015

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-34137 |
| | ) | |
| Robin L. Horvath, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

**MEMORANDUM OF DECISION
DENYING MOTION TO APPROVE COMPROMISE**

This involuntary Chapter 7 case is before the court on the Trustee's Motion to Approve Compromise ("Motion") [Doc. # 95] and objections filed by Debtor [Doc. ## 101 & 102], non-debtor spouse Terrie Horvath [Doc. # 100], and Ballenger & Moore Co., L.P.A., Thomas A. Matuszak, LLC and Matuszak & Koder, Ltd., ("Petitioning Creditors") [Doc. # 103]. The Trustee seeks approval of a proposed compromise with Fifth Third Bank ("Fifth Third"), Tony Packo's Toledo, LLC ("TP Toledo"), formerly known as TP Foods, LLC ("TP Foods"), and Bennett Management Corp, in settlement of certain state court litigation and other potential claims of the parties. The proposed compromise will also resolve a motion for relief from stay filed in this case by the Skutch Company, Ltd., as state court receiver ("Receiver") for Tony Packo's Inc., Tony Packo Food Company, LLC, Packo Properties, LLC, and Magyar Holdings, LLC ("the Packo Companies"). Although not a party to the compromise, the Motion states that the Receiver, including

its employees, agents, officers and attorneys, are direct and intended beneficiaries of the proposed settlement.

At a hearing held on January 13, 2015, the Trustee and objecting parties had the opportunity to present testimony and documentary evidence in support of their respective positions. At the hearing, the court orally granted the Trustee leave to supplement the Motion by filing a proposed amended Settlement Agreement so as to include provisions in accordance with representations made to the court at the hearing by the Trustee and Fifth Third Bank. The Trustee timely filed a proposed amended Settlement Agreement and Release [Doc. # 109], and the court heard closing arguments on the Motion on February 11, 2015.

Having considered all of the evidence, the arguments of counsel and the memoranda filed in support of the parties' respective positions, for the following reasons, the court does not approve the proposed amended Settlement Agreement and Release, and the Motion will be denied.

## BACKGROUND

### I. Litigation Relevant to the Motion to Compromise

Over the past five years, Debtor has been and currently is a party to state court litigation involving a number of cases and claims against a number of parties, stemming from his fifty percent ownership of the Packo Companies, disagreements amongst the owners, and his partial personal guaranty of the companies' debts owed to Fifth Third. The following state court litigation matters are relevant to the Trustee's Motion.

### A. Receivership Proceeding and Related Litigation

On August 18, 2010, Fifth Third, a secured creditor of the Packo Companies, obtained a cognovit judgment in the Lucas County, Ohio, Court of Common Pleas in the total amount of approximately $2,676,296, plus interest, costs and attorney fees, against the Packo Companies after their default on several loans and a cognovit judgment in the amount of approximately $669,000, plus costs and attorney fees, against Debtor and Anthony L. Packo, Jr. ("Packo, Jr.") as limited guarantors of the Packo Companies' debt. [Trustee's Ex. J]. On August 18, 2010, the state court also appointed the Skutch Company, Ltd, through its managing member Steve Skutch, as receiver over the assets of the Packo Companies. [Trustee's Ex. L]. Thereafter, extensive litigation ensued.

Over one year after entry of the cognovit judgment, Debtor filed an Ohio Civil Rule 60(b) motion for relief from that judgment, arguing that Fifth Third acted in concert with Packo, Jr., and Anthony Packo, III ("Packo III") to divest him of his ownership interest in the Packo Companies by procuring a contrived default in the notes that were the subject of the cognovit judgment. The trial court denied the Rule 60(b)

motion as untimely filed and, on May 3, 2013, the state court of appeals affirmed. [Trustee's Ex. P].

In the meantime and after an unsuccessful closed bid process, the Receiver was directed by the state court to seek bids on the receivership assets. The Receiver ultimately received five offers to purchase the Packo Companies' assets, three of which the state court found to be competitive. Competitive offers included offers by TP Foods and by Nancy Packo, LLC, of which Debtor and his wife Terrie Horvath are the only members. [*See* Trustee's Ex. M, p. 2]. The offer of TP Foods was characterized as a cash offer to the state court and, on October 7, 2011, the state court directed the Receiver to accept that offer and negotiate an asset purchase agreement. Debtor appealed that order; however, that appeal was dismissed on January 5, 2012, for lack of a final appealable order. [*See* Trustee's Ex. O, p. 4].

Notwithstanding the fact that Debtor filed a timely appeal of the October 7 order and that Debtor's Rule 60(b) appeal was still pending, since no stay pending the appeals was sought, the receivership proceedings continued. On December 7, 2011, the state court entered an order confirming ownership of, among other things, recipes for products sold by the Packo Companies. [Trustee's Ex. S]. The order defines "Recipes" as including "a list of all ingredients and their proportions" and recipes defined in the License Agreement between Tony Packo's, Inc., as licensee, and Nancy Packo Horvath, as licensor. [*Id.* at 2]. In the order, the court found that the "Recipes" defined therein, "including . . . Recipes for chili soup and hot dog sauce, are exclusive assets of entities subject to this Receivership and thus are assets of the Receivership." [*Id.*]. The court further found that TP Foods had "conditioned its purchase of the Receivership assets upon it receiving sole and exclusive rights to and ownership of, the Recipes." [*Id.* at 2-3].

On December 19, 2011, the state court entered an order authorizing the Receiver to execute the Asset Purchase Agreement ("APA") negotiated with TP Foods. [*See* Trustee's Ex. O, p. 4]. The APA lists the assets being purchased and includes, among other things, "[a]ll trade names, trademarks, service marks, brand names, trade secrets . . . material subject to copyright and other intellectual property currently or previously used in the operation of the Business or otherwise owned by any of the Sellers" and "[a]ll rights of ownership and use with respect to recipes and cooking processes for products sold currently or previously by the Sellers in the restaurants, catering, food service and retail operations. . . including, without limitation, all of the forgoing that are listed on Schedule 1.1(j)." [Trustee's Ex. N, APA attached thereto, § 1.1(i) & (j)]. The APA's Schedule 1.1(j) lists the recipes to be purchased and includes Tony Packo hot dog sauce and chili. [*Id.* at Attachment to Schedule 1.1(j)].

3

On December 22, 2011, the state court entered an order confirming the sale of the receivership assets. Debtor timely appealed the December 19 and 22 orders. After a hearing held on January 26, 2012, the sale of receivership assets closed on February 3, 2012.

On January 11, 2013, the state court of appeals entered a Decision and Judgment, finding that the trial court lacked jurisdiction to enter the December 19 and 22 orders. [Trustee's Ex. O, p. 27]. In so finding, the court addressed the jurisdictional effect of both Debtor's appeal of the denial of the Rule 60(b) motion and his appeal of the October 7, 2011, order directing acceptance of TP Foods' offer. Citing *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga County Court of Common Pleas*, 129 Ohio St. 3d 30 (2011), the appellate court explained that "once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." [*Id.* at 15]. The court found that the receivership proceedings and sale of receivership assets did not interfere with its ability to affirm, modify, or reverse the denial of Debtor's Rule 60(b) motion relating to the cognovit judgment and, thus, did not divest the trial court of jurisdiction to proceed with the receivership sale of assets. [*Id.* at 13-14]. Citing *KeyBank National Assoc. v. Mazer Corp.,* 188 Ohio App. 3d 278 (2010), the court explained that if it reversed the trial court's denial of the Rule 60(b) motion, and even though the receivership assets may have been sold to a purchaser in good faith entitled to the protection under Ohio Revised Code § 2325.03,[1] Debtor would be entitled to restitution for what he has lost because of the cognovit judgment. [*Id.* at 14].

However, the state appellate court further found that the trial court's orders entered on December 19 and 22, 2011, approving the APA and confirming the sale, did interfere with the appellate court's ability to reverse, modify, or affirm the October 7, 2011, order directing the Receiver to accept TP Foods' offer. [*Id.* at 14-27]. The court thus determined that those orders were entered without jurisdiction and, as such, were void. [*Id.* at 27]. Because an appeal cannot lie from a void judgment, the appeal was dismissed on January 11, 2013. [*Id.* at 27, 40-41]. The court noted that, on remand, the trial court could enter an order confirming the sale of assets since the jurisdictional bar had been removed by the January 5, 2012, dismissal of Debtor's appeal of the October 7 order. [*Id.* at 29]. Because the closing on the sale of assets occurred on February 3, 2012, the appellate court stated that there are no jurisdictional grounds to unwind the sale. [*Id.* at 40].

Thereafter, on May 6, 2013, the state trial court entered an order approving the terms and conditions

---

[1] Debtor had not sought a stay of execution of the cognovit judgment. [Trustee's Ex. O, p. 14].

4

of sale as proposed in the APA and confirming the February 3, 2012, sale of receivership assets ("Order Confirming Sale"). [Trustee's Ex. Q, ¶¶ 15, 30-31]. "Upon the Receiver's receipt of the sale proceeds at the Final Funding," the Order Confirming Sale provides for payment of administration expenses of the receivership first, followed by payments in the following order: to Fifth Third in full satisfaction of its judgment, to the Small Business Administration ("SBA") in full satisfaction of its secured loan, and finally, to holders of allowed unsecured claims, pro rata. [*Id.* at ¶¶ 38-39]. Debtor, Terrie Horvath, and Nancy Packo, LLC, while being represented by two of the Petitioning Creditors that are law firms, filed a notice of appeal from the May 6, 2013, Order Confirming Sale, and that appeal remains pending. Petitioning Creditors, however, have withdrawn or have moved to withdraw from their representation with respect to that appeal.[2] The appeal has been treated as stayed by the State of Ohio Sixth District Court of Appeals pending completion of Debtor's bankruptcy proceeding or relief from stay being granted by this court. [Doc. # 15, Ex. C].

       The court credits the Receiver's testimony that the sale of assets occurred in accordance with the APA that had been presented to and approved by the state court. Although TP Foods' offer had been presented to the court as a cash offer, the APA included an alternate payment provision in the event an appeal of the order confirming the sale was filed, as was the case at the time of closing. In such case, the purchase price of $5.5 million, less certain specified adjustments, would be paid by TP Foods' delivery of a promissory note and that all interest payable on the note would be earmarked for the partial payment of interest accruing on loan obligations to Fifth Third. [Trustee's Ex. N, APA attached thereto, § 3.4]. The APA then provides that "[i]f . . .in Purchaser's reasonable judgment (A) all appeals have been resolved in a manner that in [sic] eliminates the possibility that the transactions contemplated herein can be unwound or otherwise adversely affected and (B) no other court action is threatened, initiated or pending that could have such effect, then, within five business days after the occurrence of either such event" the following "shall occur simultaneously with the release of the Secured Lenders Liens:" payment of the principal balance on the note shall be paid to the Receiver less $360,000, which amount is then to be paid by TP Foods directly to persons indicated in section 3.3(c)(i) through (iii) of the APA, and in proportion to the amount owed them pursuant to those subsections. [*Id.*]. Section 3.3(c) requires payments to Debtor in the amounts of $55,000 as payment of a note "payable by Sellers to him" and $60,000 as payment of deferred

---

[2] Debtor has asserted a legal malpractice claim against principals of the law firm Petitioning Creditors, attorneys Troy Moore and Thomas Matuszak. [*See* Trustee Ex. 1, p. 3]. The Trustee has abandoned that claim. [Doc. # 90].

salary earned by him. [*Id.* at § 3.3(c)(i) & (ii)]. According to the Receiver, the deferred salary owed to Debtor was earned by him during the receivership and the note is for a pre-receivership loan by Debtor to the receivership entities.

At the February 3, 2012, closing, and in accordance with the provisions of the APA, TP Foods executed a promissory note ("Promissory Note") in favor of the Receiver in the final adjusted amount of $4,951,542.06. The Promissory Note is not part of the record before the court and has not been provided to the Trustee for her review. Although the Receiver acknowledges that the state court has not entered an order preventing production of the Promissory Note, because TP Toledo objected to disclosure and the state court has not ruled otherwise, it is the Receiver's position that the Promissory Note may not be produced for consideration in this proceeding. Since closing, TP Foods has paid to the Receiver interest on the Promissory Note in the amount of $5,600 per month as required under the APA. Although the Receiver initially paid that amount to Fifth Third in partial payment of interest on its judgment as provided in the APA, without further court involvement, Fifth Third later agreed to allow the Receiver to apply those payments to amounts owed to the SBA.

### B. Debtor's Whistleblower Case

Before Fifth Third's cognovit judgment was entered and the receivership was commenced, Debtor, along with three other employees of the Packo Companies, provided information to the Lucas County, Ohio prosecutor regarding alleged misappropriation of company funds by Packo III, vice-president of Tony Packo Food Company, LLC, and Cathleen Dooley ("Dooley"), Controller of Packo's Inc. The information provided ultimately resulted in the indictment of both Packo III and Dooley, both of whom were later acquitted.

In June 2012, Debtor filed a complaint against a number of defendants, including the Receiver, its managing member Steve Skutch ("Skutch") and consultant Gregory Waina ("Waina") in both their professional and individual capacities, TP Foods, Bennett Management Corp., Packo III, and Packo, Jr. [Trustee's Ex. G]. He alleges that his employment was terminated on December 29, 2011, by "Defendant Bennett, acting within the scope of its authority after Defendant TP Foods, LLC assumed operations of all Defendant Packo's Inc. food operations, and acting in concert with Defendant Packo III," but that he was then rehired by the Receiver on January 4, 2012. [*Id.* at ¶¶ 23-24]. At the hearing on the Motion, the Receiver testified that the December 29 letter was sent in anticipation of a closing date for the sale of receivership assets that did not go forward. Debtor further alleges in his complaint that on or about February

6

3, 2012, the Receiver sent a letter to the employees of the Packo Companies, which included Debtor, informing the employees that the assets of the receivership had been sold to TP Foods, resulting in the termination of their employment. [*Id.* at ¶ 25]. Debtor alleges that also on February 3, 2012, "Bennett, apparently acting in his official capacity as President of TP Foods, LLC, issued a letter address[ed] 'to all former employees of Tony Packo's, Inc." inviting them to apply for regular employment but that neither he nor the three employees who had assisted in providing information to the Lucas County Prosecutor received that letter. [*Id.* at ¶ 26]. Debtor further alleges that all employees who received the letter from Bennett inviting them to apply, including Packo, Jr, and Packo III, remain employees of TP Foods and that Debtor's employment was terminated in retaliation for his whistleblowing activity in violation of the Ohio Whistleblower Act and public policy. [*Id.* at ¶¶ 28, 33].

### C. Debtor's "Interference" Claims

On February 15, 2013, Debtor filed a fifty-four count complaint in state court, naming Packo, Jr., Packo III, and Dooley as defendants. [Trustee's Ex. F]. Debtor alleges, among other things, certain conduct of the defendants constitutes tortious interference with business and contractual relationships between and/or involving Debtor and Fifth Third. [*See id.* at ¶¶ 100-114]. Although Fifth Third is not named as a defendant, Debtor alleges in the complaint that Fifth Third conspired with the defendants to tortiously interfere with those contractual relationships and that Fifth Third acted maliciously and in bad faith with the specific intent of harming Debtor. [*Id.* at ¶¶107-112]. Notwithstanding those allegations, Debtor did not include such a claim against Fifth Third as an asset in his bankruptcy schedules. [*see* Trustee's Ex. 1]. He also testified at his first meeting of creditors that he did not have a claim against Fifth Third and later that he did not know if he has a claim against Fifth Third. [Doc. # 94, Ex. A, p. 15 & Ex. B, p. 10-11].

### D. Fifth Third's Foreclosure Suit and Collection Efforts

After obtaining the cognovit judgment against Debtor, Fifth Third obtained a judgment lien against real property owned by Debtor. [*See* Trustee's Ex. E & attached Ex. B]. On May 13, 2011, Fifth Third commenced a foreclosure action relating to property located at 1925 Consaul Street, Toledo, Ohio ("Consaul Property"). The Trustee estimates the value of the Consaul Property to be approximately $60,000.

In addition to the foreclosure action, Fifth Third garnished Debtor's Key Bank account in the amount of $30,500, which amount is being held by the state court, and setoff $110,000 with respect to Debtor's funds on deposit with Fifth Third.

7

## II. Debtor's Bankruptcy Case

Petitioning Creditors, the Debtor's prepetition lawyers and accountant, filed this involuntary petition on October 7, 2013. The Order for Relief was entered on December 23, 2013, and the Trustee was appointed on January 16, 2014. Debtor's bankruptcy schedules initially filed in this case show assets that include, among other things, the Consaul Property, [Doc. # 42], "Tony Packo's Recipe 'Ingredient' List," fifty percent ownership interests in Tony Packo's, Inc., and Packo Properties, $55,000 owed to him by TP Foods, $60,000 owed to him for "back wages," and his interests in the Whistleblower case and the "Lawsuit to Overturn Asset Sale," [Trustee's Ex. 1]. Debtor's Interference suit is not included as an asset. On February 10, 2015, after the evidentiary hearing on the Motion held on January 13, 2015, and before the court heard closing arguments on February 11, Debtor filed an amended Schedule B, adding "assets from the Estate of Nancy Packo Horvath, including, but not limited to, the License Agreement dated October 29, 2002, between Nancy Packo Horvath & Tony Packo's Inc. and any rights arising from that agreement." [Doc. # 119, Amended Schedule B, p. 4]. Debtor's amended Schedule B also adds "potential claims" against "Receiver Steven Skutch and/or the Skutch Companies, Limited," and Gregory Waina "CPA and Consultant for Steven Skutch," and "potential claims against Fifth Third Bank for violation of various banking and underwriting rules and regulations."[3] [*Id.* at 4-5].

Timely proofs of claim were filed in the total amount of $1,739,983.13, including seven proofs of claim filed by Fifth Third in the total amount of approximately $782,125, proofs of claim filed by Petitioning Creditors of approximately $821,850, and a priority tax claim filed by the State of Ohio of approximately $86,704. Although filed after the claims bar date, Terrie Horvath filed a proof of claim with no dollar amount but indicating as a basis for her claim that she has an interest in assets of the bankruptcy estate. In her objection to, and at the hearing on, the Motion, she clarified that she claims an interest in the $60,000 owed to Debtor as deferred compensation earned during the receivership, which she characterizes as a marital asset in their pending divorce action.

After her appointment, in addition to meeting with Debtor at the first meeting of creditors that took place over a period of two days, the Trustee met with Debtor's prepetition counsel and reviewed documents provided by them in determining what value Debtor's state court claims may have for the bankruptcy estate. She also met with the Receiver and counsel for the Receiver, as well as with counsel for Terrie Horvath.

---

[3] Debtor's Amended Schedule B also includes "potential claims" against Robison, Curphey & O'Connell and two of its attorneys for "failure to protect Tony Packo's Inc.'s (and related entities) Assets," which claims are not affected by the proposed Settlement Agreement. [Doc. # 119, p.5].

The Trustee testified that the bankruptcy estate has no funds with which she can pursue Debtor's state court claims. On January 7, 2014, the Receiver filed a motion for relief from stay to permit the Receiver to proceed under nonbankruptcy law in the state court appeal of the Order Confirming Sale.

### III. Proposed Amended Settlement Agreement and Release

The proposed Settlement Agreement and Release, as amended in the Trustee's Supplement, ("Settlement Agreement" or "Agreement") provides for resolution of Debtor's appeal from the Order Confirming Sale and all claims that Debtor may have against Fifth Third Bank, the Receiver, Skutch and Waina, both individually and as agents of the Receiver, TP Toledo fka TP Foods, and Bennett Management Corp. It also provides for resolution of Fifth Third's foreclosure action relating to Debtor's Consaul Property and for the release of any claim that Debtor has to the Tony Packo's Recipe Ingredient list or other intellectual property relating to products sold by the Packo Companies. The Trustee testified that it does not provide for the release of any claims against Packo, Jr. or Packo III.

Specifically, the Settlement Agreement provides that Fifth Third will pay $25,000 to the Trustee within ten days of the court's approval of the Agreement, and the Trustee will enter an appearance in the pending state court appeal of the Order Confirming Sale ("the Appeal") and will dismiss the Appeal filed by Debtor and Nancy Packo, LLC, to the extent of Debtor's authority with respect to that entity. [Doc. # 109, Attached Settlement Agreement, p. 3, ¶¶ 1 & 3]. The Agreement requires Fifth Third and/or the Receiver to obtain dismissal of the Appeal filed by Terrie Horvath and Nancy Packo, LLC, to the extent of Terrie Horvath's authority with respect to that entity.[4] [*Id.* at ¶ 2]. By dismissing the Appeal, the Trustee acknowledges that she will be relinquishing all objections to the asset sale and confirmation of the asset sale and relinquishing any claim to assets included in the receivership, including recipes and ingredients, but that she retains any right to a distribution from the receivership based upon Debtor's ownership interests in the Packo Companies in the event that there is such a distribution after all receivership creditors are paid. [*Id.* at ¶ 3].

The Settlement Agreement further provides that after the Appeal has been dismissed by all parties, TP Toledo will pay to the Receiver the amount due under the Promissory Note "consistent with the terms of the asset purchase agreement. . . ." [*Id.*]. The Settlement Agreement specifically provides that "[n]otwithstanding anything to the contrary in this Release, this Release does not alter in any way the

---

[4] Counsel for Terrie Horvath stated at closing argument that Ms. Horvath will cooperate in seeking dismissal of the Appeal.

obligations of TP Toledo under the Promissory Note or asset purchase agreement except that payment to be made to [Debtor] under the Promissory Note, and in accordance with the asset purchase agreement, will be made to the Trustee." [*Id.*]. The parties acknowledge that this will require TP Toledo to pay to the Trustee the sum of $55,000 for repayment of the loan obligation owed to Debtor and $60,000 representing deferred compensation owed to Debtor, as set forth in § 3.3(c) of the APA, for a total cash payment in the amount of $115,000. [*Id.* at 4, ¶ 5].

The Settlement Agreement provides for disbursements from the proceeds received by the Receiver on payment of the Promissory Note as follows: "The Receiver will pay Fifth Third and the United States Small Business Administration ("SBA") on their secured obligations, and their mortgages will be released, consistent with the terms of the asset purchase agreement. Fifth Third will also receive the additional sum of $25,000 at time of funding as partial payment for accrued interest due under the terms of the asset purchase agreement, but not paid because of payments made to the SBA instead." [*Id.* at ¶ 4]. On receipt of that $25,000, Fifth Third agrees that it will then release its judgment lien and dismiss the foreclosure suit that is pending against the Consaul Property. [*Id.* at ¶ 7].

The Settlement Agreement also provides that Fifth Third shall be entitled to pursue the release of all garnishment funds in the approximate amount of $30,500 that are currently on deposit with the state court and that the Trustee and Receiver shall assist in that process. [*Id.* at ¶ 6]. This provision includes no condition making it dependent upon any other provision of the Agreement first occurring. In addition, the Agreement provides that Bennett Management Corp. ("BMC") and TP Toledo (defined in the Agreement as the Bennett Parties, [*Id.* at 1]) agree to pay to the Trustee the total sum of $1,000 in exchange for a release and dismissal with prejudice of all claims asserted against them in the Whistleblower case. [*Id.* at 4, ¶ 8]. Finally, under the Agreement, Fifth Third agrees that it will withdraw all of its proofs of claim filed in this case and waive any further claim against the bankruptcy estate. [*Id.* at ¶ 9]

In consideration of the foregoing, the Settlement Agreement provides that, effective upon entry of an order approving this Settlement,

> Fifth Third, the Trustee, and TP Toledo hereby mutually release and forever discharge each other, and their respective heirs, spouses, representative, assigns, officers, directors, shareholders, members agents, employees, legal counsel for the parties herein, including, without limitation, the Receiver, its agents, members and representatives . . . from any and all claims, demands, debts, liabilities, actions and causes of action arising from the matters set forth in the lawsuits and/or appeals identified herein, pending in the Lucas County Common Pleas Court, the Ohio Sixth District Court of Appeals and/or the United States Bankruptcy Court, as well as any and all claims or appeals, asserted or not yet asserted, that

> the Trustee or Fifth Third may have or claim to have for any fees, costs, losses, damages or expense due, or claimed to be due, as a result of the matters set forth herein. The Trustee further agrees to dismiss [the Whistleblower lawsuit] against TP Toledo and BMC . . . except to the extent that there are claims against non-settling defendants. . . .

[*Id.* at 4-5, ¶ 10]. In addition to the parties to the Settlement Agreement releasing all claims asserted or that could have been asserted against each other "in the lawsuits identified herein," although not a party to the Agreement, the Settlement Agreement also provides that the Receiver releases all such claims against the settling parties. [*Id.* at 5, ¶ 11].

The Settlement Agreement includes an integration clause stating that "no promise, inducement or agreement not expressed herein has been made by any party or any of their representatives," and that the Agreement "constitutes the entire agreement between the parties." [*Id.* at ¶ 14].

At the hearing on the Motion, the Trustee offered her assessment of the claims asserted by Debtor in state court and the likelihood of those claims resulting in any recovery of money for the bankruptcy estate. With respect to the Appeal, the Trustee testified that no assets would be generated for the estate by winning the appeal, and the only remedy would be the unwinding of the sale of receivership assets and another opportunity to seek bids on those assets. There being no certainty as to whether a more lucrative bid would be obtained and thus, no certainty as to what the bankruptcy estate might receive, the Trustee testified that she believes the Settlement Agreement provides such certainty and is in the best interest of the bankruptcy estate.

The Trustee testified that she places little or no value on Debtor's Whistleblower claims against the Receiver, and Skutch and Waina, since the February 3, 2012, letter sent by the Receiver terminating Debtor's employment was sent to all employees because the estate assets had been sold and the Receiver was no longer operating the Packo Companies. She also places little or no value on Debtor's claims against TP Foods and BMC since they were under no obligation to rehire Debtor. Moreover, it is apparently the position of TP Foods that pendency of the Whistleblower suit would adversely affect the transactions contemplated in the APA such that, under § 3.4 of the APA, it would be justified in further delaying payment of the Promissory Note. The Trustee acknowledges that she could litigate this interpretation of § 3.4. However, given her assessment of the value of the case and the fact that the proposed Settlement Agreement is a global agreement that would not allow her to parcel out this provision, she believes the additional $1,000 to be paid to the bankruptcy estate in exchange for dismissal of Debtor's Whistleblower claims against the settling parties only is reasonable and in the best interest of the estate.

With respect to the release of any claims that Debtor may have against Fifth Third relating to his Interference suit or otherwise, the Trustee testified that, in placing little or no value on such claims, she relied on Debtor's testimony at the first meeting of creditors that he does not believe he has any claim against Fifth Third and on Debtor's bankruptcy schedules initially filed in this case, which included no such claim as an asset of the estate.

Finally, with respect to releasing any claim to the Tony Packo's recipe ingredient list that is scheduled as an asset of Debtor's bankruptcy Schedule B, in light of the state court's determination that the Tony Packo recipes were assets of the receivership, the Trustee places no independent value for the bankruptcy estate on the recipe list, the value thereof being part of the consideration for sale of the receivership assets.

For all of these reasons, and given the time value of money and the fact that she has no money to pursue the Appeal or any of Debtor's other state law claims, the Trustee testified that she believes the Settlement Agreement is in the best interest of the bankruptcy estate.

## LAW AND ANALYSIS

### I. Standard for Approval of Proposed Compromise

Under Bankruptcy Rule 9019, the court may approve a compromise or settlement "[o]n motion by the trustee and after notice and a hearing. . . ." The rule offers no guidance on the criteria to be used in evaluating whether a compromise and settlement should be approved. However, the Supreme Court had addressed the analysis that bankruptcy courts should employ. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). In *Anderson,* the Supreme Court instructed that a bankruptcy court must determine whether the compromise is fair and equitable and, in doing so, must "apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and "should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Id.* To this end, courts have considered the following factors when asked to approve a compromise:

> (1) the probability of success in litigation;
> (2) the difficulties, if any, to be encountered in collecting any judgments that might be rendered;
> (3) the complexity of the litigation involved, as well as the expense, inconvenience and delay necessarily attendant to the litigation; and

12

(4) the paramount interests of creditors with proper deference to their reasonable views.

*McGraw v. Yelverton (In re Bell & Beckwith)*, 87 B.R. 476, 478 (N.D. Ohio 1988) (citing *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir. 1986)); *see also Waldschmidt v. Commerce Union Bank (In re Bauer)*, 859 F.2d 438, 441 (6th Cir. 1988) (explaining that "the court is obligated to weigh all conflicting interests in deciding whether the compromise is 'fair and equitable,' considering such factors as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors"); *In re Bard,* 49 F. App'x 528, 530 (6th Cir. 2002).

In considering these factors, the court does not resolve disputed factual and legal issues, nor should it substitute its judgment for that of the trustee. *McGraw*, 87 B.R. at 478-79. It should, however, canvass the issues and determine whether the proposed settlement "'falls below the lowest point in the range of reasonableness.'" *Id.* at 479 (citation omitted); *In re Nicole Gas Prod., Ltd*., 518 B.R. 429, 441 (Bankr. S.D. Ohio 2014). In the end, the essential inquiry the court must make is whether the compromise is in the best interest of the estate. *McGraw,* 87 B.R. at 478. The trustee, as the proponent of the compromise, has the burden of persuasion on that issue. *Id.*; *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

## II. The Proposed Compromise

Initially, the court notes that, although Terrie Horvath filed an "objection" to the Motion to approve the proposed compromise, the objection simply asserts her contingent interest in potential settlement proceeds consisting of the $60,000 that represents deferred compensation owed to Debtor and that is to be paid by TP Toledo under the APA. She asserts that the $60,000 constitutes a marital asset subject to division in the the divorce proceeding pending in state court. At closing argument, her counsel conceded that the $60,000 would, nevertheless, be property of the bankruptcy estate. *See In re Greer*, 242 B.R. 389, 396-97 (Bankr. N.D. Ohio 1999). He also made clear that Ms. Horvath does not object to the terms of the Settlement Agreement but, rather, urges the court to approve the compromise.

Debtor and Petitioning Creditors object to approval of the proposed compromise. As a preliminary matter, the court notes that a Chapter 7 debtor generally lacks standing to contest a settlement on behalf of the estate because the debtor lacks a pecuniary interest in the settlement since he will not receive any distribution from the estate. *Monus v. Lambros*, 286 B.R. 629, 634 (N.D. Ohio 2002). In this case, however, Debtor has a sufficient pecuniary interest in the Settlement Agreement since it will likely impact

the amount of funds available to pay a nondischargeable priority tax claim owed by him. *See DeBilio v. Golden (In re DeBilio)*, No. CC-13-1441-TaPaKi, 2014 WL 4476585, at *3, 2014 Bankr. LEXIS 3886, at *8 (B.A.P. 9th Cir. Sept. 11, 2014) (finding debtor had a pecuniary interest in settlement and sale in light of a nondischargeable support claim); *In re Ellis*, No. 10-16998-RLM-7A, 2014 WL 1725810, at *4, 2014 Bankr. LEXIS 1952, at *12 (Bankr. S.D. Ind. Apr. 30, 2014) (finding Chapter 7 debtor had standing to object to a fee application because of a nondischargeable debt).

While the court discusses each of the factors set forth in *McGraw* as they apply to the various claims proposed to be settled, in the end, the court does not approve the Settlement Agreement filed with the court as it finds that it is not in the best interest of creditors and the bankruptcy estate due to ambiguities and inconsistencies within the Settlement Agreement that make the Agreement itself susceptible to litigation as to its meaning and implementation.

### A. Whistleblower Case

Debtor's objection to approval of the Settlement Agreement is based in part on his contention that $1,000 is an unreasonably low figure as settlement of his Whistleblower claims against the Receiver and its agents Skutch and Waina, TP Foods and BMC. Alternatively, if the court finds $1,000 to be a reasonable value, Debtor asks the court to allow him "to redeem the rights" in the Whistleblower case for that amount so that he may prosecute the case himself.

While Debtor's Whistleblower claims do not appear to be complex, the court finds the Trustee's conclusion that there was little or no probability of success in litigating those claims to be reasonable and justifies settling the claims as proposed in the Agreement. The Trustee considered the timing of the Receiver's letter terminating not only Debtor's employment but the employment of all Packo employees and the fact that the Receiver was no longer operating the Packo Companies at that time since the receivership assets had been sold. She also considered any obligation of TP Foods and Bennett Management Corp. to rehire Debtor and found no obligation existed, nor is there even any evidence that Debtor applied for employment with TP Foods.

While TP Foods' position that it would be justified under § 3.4 of the APA to withhold payment of its Promissory Note if Debtor's Whistleblower case remained pending is questionable at best, especially in light of the representation of its counsel that pendency of the Whistleblower cases of the three employees that assisted Debtor in providing information to the Lucas County Prosecutor would not provide such justification, given the Trustee's reasonable assessment of the case and the global nature of the Settlement

14

Agreement, the court finds accepting $1,000 for release of Debtor's Whistleblower claims against all except Packo III and Packo, Jr., to be reasonable and in the best interests of the bankruptcy estate and its creditors. And because Debtor "redeeming" the claims would frustrate any compromise given the global nature of the Agreement, Debtor's objection to including in the Agreement the settlement of some of his Whistleblower claims is not well taken. *In re Central Illinois Energy, L.L.C.*, 406 B.R. 371, 374 (Bankr. C.D. Ill. 2008)(a bankruptcy court must accept or reject a settlement agreement as presented and cannot rewrite it).

### B. Debtor's "Interference" Claims and other "Potential Claims" Against Fifth Third

The proposed Settlement Agreement requires a $25,000 payment by Fifth Third in exchange, in part, for the release of all claims that Debtor may have against Fifth Third. Debtor's Interference lawsuit includes allegations that Fifth Third conspired with Packo III and Packo, Jr., to tortiously interfere with its contractual relationships with Debtor. In placing little or no value on Debtor's Interference claim against Fifth Third, the Trustee reasonably considered the fact that Debtor placed no value on such claim, as evidenced by the absence of the Interference claim on his bankruptcy schedules. The court notes that even his amended Schedule B filed nearly a month after the evidentiary hearing includes no such claim.

Debtor's amended Schedule B does include what Debtor describes as a "potential claim" against Fifth Third for "violation of various banking and underwriting rules and regulations." There is no indication that the Trustee was ever made aware of any such claim before negotiating the proposed Settlement Agreement. Given the lack of any specificity in describing the claim and Debtor's description of it as only a "potential claim," and given the Trustee's lack of any funds to pursue such a claim, accepting $25,000 in exchange for the release of all claims against Fifth Third is not unreasonable.

### C. Appeal of the May 6, 2013, Order Confirming Sale

According to the Trustee, there is no benefit to the bankruptcy estate in pursuing the appeal of the Order Confirming Sale ("the Appeal") since the only remedy if she prevails would be the unwinding of the sale of receivership assets. It is the Trustee's position that succeeding in the Appeal would provide only another opportunity for the Receiver to seek bids on those assets, and there is no certainty that a more lucrative bid would be obtained. Debtor, for his part, contends that if the Trustee prevails and the state court of appeals determines that the assets were sold to a bona fide purchaser, she may be entitled to monetary relief from the proceeds of the sale of assets that could exceed the value of the proposed Settlement Agreement.

Debtor's contention is based upon a statement in the court of appeals' January 11, 2013, decision finding that the trial court's orders entered on December 19 and 22, 2011, approving the APA and confirming the sale were entered without jurisdiction. As noted earlier, the court of appeals considered the jurisdictional effect of both Debtor's appeal of the denial of his Rule 60(b) motion seeking relief from Fifth Third's cognovit judgment and his appeal of the October 7, 2011, order directing the Receiver to accept TP Foods' offer. In finding that Debtor's appeal of the denial of his Rule 60(b) motion did not divest the trial court of jurisdiction to proceed with sale of assets in the receivership proceedings since those proceedings did not interfere with its ability to affirm, modify, or reverse the denial of that motion, the court of appeals stated that "[b]ecause the receivership assets have been sold to a purchaser who might qualify for protection under R.C. 2325.03,[5] Horvath may be relegated to receiving restitution in the form of the amount paid for the assets, instead of the assets themselves." [Trustee's Ex. O, ¶ 22 (reported at *Horvath v. Packo*, 985 N.E.2d 966, 982 (2013)]. However, in finding that Debtor's appeal of the October 7 order did divest the trial court of jurisdiction, the court of appeals explained that "the confirmation of sale is void" and "TP Foods is not protected by R.C. 2325.03." [*Id.* at ¶ 47]. Contrary to Debtor's contention that monetary relief from the proceeds of the sale of assets may be available, the court of appeals further explained:

> While it is true that the purchaser of assets at a duly confirmed judicial sale is protected if the underlying judgment of foreclosure is reversed or vacated, that protection does not apply where the order confirming the judicial sale is reversed or vacated. 64 Ohio Jurisprudence 3d, Judicial Sales, Section 112 (2012). Because it is the order of confirmation of sale that vests title in the purchaser, it follows that where that order is vacated or reversed, the purchaser no longer has title to the assets. *See id.* ("An order confirming a judicial sale having been set aside, the case stands as though the order had never been made. The sale and the confirmation are nullified so that no title passes to the purchaser").

[*Id.* at ¶ 52]. The court thus finds the Trustee's assessment that the only remedy in the event she would prevail in the Appeal is the unwinding of the sale of receivership assets to be reasonable.

Petitioning Creditors also object to the Trustee's assessment of the value of prevailing in the Appeal. According to Petitioning Creditors, one of the issues in the Appeal is whether the Tony Packo's recipe ingredient list and rights to recipes defined in the License Agreement between Nancy Packo Horvath and

---

[5] Ohio Revised Code § 2325.03 provides in relevant part as follows:
The title to property, which title is the subject of a final judgment or order sought to be vacated, modified, or set aside by any type of proceeding or attack and which title has, by, in consequence of, or in reliance upon the final judgment or order, passed to a purchaser in good faith, shall not be affected by the proceeding or attack; nor shall the title to property that is sold before judgment under an attachment be affected by the proceeding or attack.

16

Tony Packo's Inc. ("License Agreement") were receivership assets properly sold to TP Foods. Debtor has scheduled them as assets of his bankruptcy estate and, according to Petitioning Creditors, the bankruptcy estate, not the receivership, is entitled to the value of those assets, whatever that value is. Petitioning Creditors argue that the state trial court's December 7, 2011, order finding that the list of ingredients and recipes were assets of the receivership was entered during a time that the trial court lacked jurisdiction to do so and that the Trustee therefore erred in relying on that order in placing no value on those assets. Petitioning Creditors also object to the Trustee's assessment since she testified that she has not even reviewed the License Agreement. The License Agreement is not part of the court record. Although there may be some merit to Petitioning Creditors' argument, because the Motion will be denied on other grounds discussed below, the court leaves the argument for another day.

While collection of any judgment is not a factor with respect to the Appeal, the complexity and expense of the litigation, especially in light of the fact that the Trustee has no funds to pursue the Appeal, weigh in favor of approval of the proposed compromise. Nevertheless, the court finds that the fourth factor under *McGraw,* the paramount interests of creditors, weighs heavily against approval.

In arguing that the proposed Settlement Agreement is in the best interest of creditors, the Trustee asserts that the Agreement will bring finality to approximately five years of litigation, resulting in the certainty of funds being paid to the bankruptcy estate now rather than at some later date. Petitioning Creditors argue that simply causing the Appeal to be dismissed, and not providing the releases included in the Agreement, will apparently require TP Foods to fund the unseen Promissory Note and will net the bankruptcy estate $4,500 more than the total to be received under the terms of the Agreement. This argument assumes that Fifth Third will be paid in full (principal, interest, costs, and attorney fees) in the receivership, negating its proofs of claim filed in this case and resulting in the release of not only the lien on the Consaul Property as provided in the Agreement but also the $30,500 in garnished funds held by the state court. This assumption, however, is not a given, and the court does not find that the $4,500 difference in the Settlement Agreement provisions falls below the lowest point in the range of reasonableness.

Nevertheless, a closer look at the Settlement Agreement leads the court to believe that it will not necessarily achieve the finality and certainty of funds being paid now rather than later as asserted by the Trustee. Rather, due to ambiguities and inconsistencies within the Agreement itself, the court finds it susceptible to additional, and perhaps protracted, litigation that could impair any benefit of the Agreement.

For example, with the exception of the $25,000 to be paid by Fifth Third within ten days of approval

of the Settlement, the Settlement Agreement is unclear as to when any other payment will be made. There is repeated reference in the Settlement Agreement to payment being made by TP Toledo in accordance with the terms of its Promissory Note, which the Trustee has never seen. Specifically, paragraph three of the Agreement requires, after the Appeal is dismissed, that TP Toledo shall pay the amount due under its Promissory Note consistent with the terms of the APA. However, that paragraph also specifies that "Notwithstanding anything to the contrary" in the Settlement Agreement, the Agreement "does not alter in any way the obligations of TP Toledo *under the Promissory Note,*" except that the $115,000 owed to Debtor will be paid to the Trustee, not to Debtor. [Doc. # 109, p. 3, ¶ 3 (emphasis added)]. Similarly, paragraph 5 provides that the parties agree that "in accordance with the Asset Purchase Agreement *and Promissory Note,*" the $115,000 will be paid to the Trustee when the Promissory Note is paid by TP Toledo. [*Id.* at 4, ¶ 5 (emphasis added)]. When asked at the hearing if the Promissory Note was relevant in determining whether the proposed compromise would result in payment, the Receiver, who presumably has seen the Promissory Note, testified that he was "not qualified to answer" that question. Whether the Promissory Note includes any additional terms that would justify TP Toledo's non-payment or delay in payment remains an unknown. Also, the Agreement requires the "Bennett Parties" to pay the Trustee $1,000 in exchange for a release and dismissal of the Whistleblower case but does not state the timing of that payment. [*Id.* at ¶ 8].

     The court also finds the Settlement Agreement ambiguous as to what amount must be paid to Fifth Third before it is required to release its mortgage on the receivership assets and its judgment lien on the Consaul Property. At the hearing on the Motion and at closing argument, Fifth Third represented to the court that, "as part of this Settlement" it agreed to waive its right to payment of interest, costs and attorney fees from the receivership. However, the relevant provision of the Agreement states only that the Receiver will pay Fifth Third and the SBA "on their secured obligations" and that Fifth Third will also receive "an additional sum of $25,000" as "partial payment for accrued interest due. . . ." [*Id.* at 4, ¶ 4]. As noted, there is an integration clause in the Settlement Agreement. The amount to be paid to Fifth Third is still relevant since Fifth Third is not required to release its judgment lien on the Consaul Property until it receives the $25,000 set forth in paragraph four of the Settlement Agreement.

     The Settlement Agreement also states that Fifth Third's mortgage will be released "consistent with the terms of the asset purchase agreement." [*Id.*]. However, the APA includes no provision requiring Fifth Third to release its liens upon less than full payment, and no payment by TP Toledo is due under the APA

18

unless Fifth Third's liens are simultaneously released.

Certain inconsistencies in the Settlement Agreement also make it susceptible to further litigation. For example, paragraph ten of the Agreement states that "[i]n consideration of the foregoing payments . . . the receipt of which. . .are hereby acknowledged, and effective upon entry of an Order . . . approving this Settlement," the settling parties mutually release each other, "*their agents and employees*" and the Receiver "from any and all claims . . . arising from the matters set forth in the lawsuits and/or appeals identified herein, pending in [state court]." [*Id*. at 4-5, ¶ 10 (emphasis added)]. Initially, the court notes that it appears that the Trustee would be acknowledging receipt of payments that, pursuant to the terms of the Agreement, would not yet have been received and providing releases that would be effective before any payments are made. This is also a concern due to the lack of any evidence that TP Toledo has the present ability to fund its Promissory Note, notwithstanding that its counsel has emphasized at hearings in this court its intention to do so.

Paragraph ten also appears to contradict other paragraphs that indicate that the parties' various claims are not being waived simply on approval of the Settlement Agreement. For example, paragraph four states that the Trustee is not waiving any right to a distribution from the receivership in the event that there is a distribution after payment of all creditors, and paragraph seven states that Fifth Third's judgment lien will not be released and foreclosure case dismissed until it receives the $25,000 interest payment. Paragraph ten also appears to release claims against Packo, Jr. and Packo III (defendants in Debtor's Interference lawsuit) to the extent that they remain employees of TP Toledo, contrary to the Trustee's testimony that such claims are not being released. And this provision creates some ambiguity with respect to releases relating to the Whistleblower lawsuit in light of the final sentence of that paragraph requiring the Trustee to dismiss the Whistleblower lawsuit, "except to the extent that there are claims against non-settling defendants." [*Id.*].

Finally, paragraph eleven of the Settlement Agreement provides for the release of all claims "asserted or which could have been asserted" by not only the settling parties but also the Receiver. While the settling parties may be able to agree to release any claims they might have against the Receiver, the court questions its ability to approve an agreement releasing any claims held by the Receiver as it is not a party to the Agreement.

For all of the foregoing reasons, and because the ambiguities and inconsistencies within the Settlement Agreement make it susceptible to continued, and perhaps, protracted litigation as to its meaning

and implementation, the court concludes that the Settlement Agreement is not in the best interest of creditors and the bankruptcy estate in its current state. *In re Central Illinois Energy, L.L.C.*, 406 B.R. at 374.

     A separate order denying the Motion in accordance with this Memorandum of Decision will be entered by the court.

###